IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWIN NUNEZ,                           :
                                       :
            Plaintiff,                 :         CIVIL NO. 4:08-CV-1956
                                       :
      v.                               :         Hon. John E. Jones III
                                       :
UNITED STATES OF AMERICA, *et al.*,    :
                                       :
            Defendants.                :

## MEMORANDUM

March 29, 2010

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

This *pro se* civil rights action was filed by Plaintiff Edwin Nunez ("Plaintiff" or

"Nunez"), an inmate presently confined at the Federal Correctional Institution -

Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania.  In his Complaint, filed on

October 27, 2008, Plaintiff alleges *Bivens*[1] claims under 28 U.S.C. § 1331 and the

Federal Tort Claims Act ("FTCA").  (Doc. 1.)  In addition to the United States of

America, Plaintiff names the following employees of FCI Schuylkill as Defendants:

---

[1]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
*Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal-question jurisdiction of the district courts to
obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*,
438 U.S. 478, 504 (1978).

T.R. Sniezek, Warden; Kimberly Ask-Carlson, Associate Warden; Jacqueline Justice, Health Services Administrator; Russell Hendershot, Medical Doctor; David Steffan, Physician Assistant ("P.A."); and L.T. Rarick, Emergency Medical Technician. Presently pending is a Motion to Dismiss and/or for Summary Judgment filed on behalf of Defendants. (Doc. 17.) The Motion has been fully briefed and is ripe for disposition. For the reasons set forth below, the Motion will be granted.

In his Complaint, Nunez alleges that, on the afternoon of July 4, 2007, he injured his leg on the softball field at FCI Schuylkill. (Doc. 1 at 3.) He asserts three (3) causes of action under *Bivens* against Defendants Sniezek, Justice, and Steffan alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate medical treatment after his injury. (*See* Doc. 1 at 15-18.) Specifically, he alleges that Defendants initially failed to correctly diagnose his injury. He then alleges that Defendants failed to obtain a dentist to remove his loose teeth so that general anesthesia could be administered for surgery to repair his Achilles tendon, and that, as a result, he was given a spinal epidural for the surgery that resulted in an injury to his back. Nunez claims that, after his surgery, Defendants provided inadequate medical care for his leg and back.

2

Nunez also asserts a claim under the FTCA that the Health Services Staff at FCI Schuylkill were negligent in failing to properly diagnose and treat his Achilles tendon injury and in failing to ensure the removal of his loose teeth prior to surgery to repair his injury, which resulted in the necessity of using a spinal epidural for the surgery and an injury to his back. (*See id.* at 20-25.)

Service of the Complaint was directed by Order dated December 23, 2008. (Doc. 10.) On March 23, 2009, Defendants filed the instant Motion. (Doc. 17.) After requesting an extension of time, which was granted, on April 23, 2009, Defendants filed a supporting brief (Doc. 22), Statement of Facts (Doc. 23), and supporting materials (Docs. 22-4, 22-5, 22-6, 22-7, 22-8, 22-9). On May 18, 2009, after the deadline for submission of his opposition to Defendants' Motion had passed, Nunez filed a letter with the Court renewing the request for appointment of counsel (Doc. 3) that he had made at the outset of the case. (Doc. 25.) By Order dated May 22, 2009, Plaintiff's Motion to appoint counsel was denied, the Court *sua sponte* granted an extension of time for Nunez to file his opposition, and he was directed to file his opposition to Defendants' Motion within twenty (20) days. (Doc. 27.)

On June 9, 2009, Nunez filed a Motion seeking an additional thirty (30) day extension of the deadline for filing his opposition. (Doc. 28.) By Order dated June

11, 2009, Nunez's Motion was granted, and he was directed to file his opposition on or before July 10, 2009.  (Doc. 29.)  On July 10, Nunez filed a Motion renewing his request for the appointment of counsel.  (Doc. 31.)  He also filed correspondence with the Court labeled as "Ex Parte Communication" in which he requested an additional extension of time to file his opposition to Defendants' Motion.  (Doc. 32.)  Nunez subsequently made a formal request for a thirty (30) day extension of time in a Motion filed on July 20, 2009.  (Doc. 34.)   By Order dated July 22, 2009, Nunez's renewed Motion for appointment of counsel was denied on the basis that he had failed to set forth sufficient special circumstances or factors which would warrant reconsideration of the factors set forth in *Tabron v. Grace*, 6 F.3d 147, 156-57 (3d Cir. 1993).  (Doc. 36.)  In addition, Nunez's request for an additional extension of time was granted, and he was afforded a final extension of twenty (20) days to file his opposition to Defendants' Motion.  (*Id.*)

On August 17, 2009, Nunez filed a document entitled "Motion in Opposition" (Doc. 37) in which he requested that the Court deny Defendants' Motion, a Statement of Facts (Doc. 38) responding to Defendants' Statement, and a document entitled "Brief in Support of Defendants Motion to Dismiss or in the Alternative Summary Judgment" (Doc. 39).  While the heading of the latter document was written in

English, the rest of the document was written in Spanish. Because Nunez had demonstrated an ability to file a document in English through his prior pleadings, by Order dated November 12, 2009, he was directed to re-file an English version of the document. (Doc. 41.) On November 30, 2009, Nunez complied with the Court's Order by filing an English version of the document filed at Document number 39. (Doc. 42.) Accordingly, the instant Motion is ripe for review.

## I.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

Defendants seek dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants seek summary judgment and have submitted evidentiary documents outside the pleadings in support of their motion. Federal Rule of Civil Procedure 12(d) provides:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). In light of the fact that Defendants submitted matters outside the pleadings with the instant Motion and styled it as seeking dismissal, or in the alternative, summary judgment, this Court's May 22, June 11, and July 22, 2009

Orders granting Nunez extensions of time to file his opposition specifically directed

him to file his opposition, including an opposition brief as required by Middle District

of Pennsylvania Local Rule ("LR") 7.6, and a statement of material facts as required

by LR 56.1. (*See* Docs. 27, 29, 36.)  Indeed, in opposing the Motion, Nunez submitted

a brief [2] (Doc. 42) and Statement of Facts responding to Defendants' Statement (Doc.

38).  Accordingly, the instant Motion will be treated solely as one seeking summary

judgment.

### B.    Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an

---

[2]Although Nunez identifies his filing as a brief, it does not contain arguments responding to Defendants' brief, but rather states that he needs the help of a lawyer to continue with his case and that he continues to receive inadequate medical care at FCI Schuylkill.  (*See* Doc. 42.)  Nunez already had filed a second request for appointment of counsel instead of filing his opposition to the instant Motion, and in denying this request, we explained that he had failed to present sufficient special circumstances to warrant reconsideration of the issue.  (*See* Docs. 31, 36.)  We also clearly stated that we would provide a final extension for Nunez to file his opposition.  (*See* Doc. 36 at 3.)  Plaintiff chose to file the document at Document Number 42 as his brief in response to that Order.  To the extent that he is renewing his request for counsel for a third time in this document, we would deny that request for the same reasons stated in our previous Orders (*see* Docs. 27, 36).

absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

## II.    STATEMENT OF FACTS

Defendants have filed a fifty-eight (58) page, 359 paragraph Statement of Material Facts ("SMF") in support of the instant Motion. (Doc. 23, Dfts. SMF.) Plaintiff filed a Statement (Doc. 38) responding to each of the numbered paragraphs set forth in Defendants' Statement. Plaintiff agrees to numerous facts without qualification, and therefore, those facts are adopted by the Court as true and incorporated herein by reference. (*See* Docs. 23, 38 ¶¶ 1-9, 14, 16-19, 22-23, 25-32, 34, 37, 40, 42, 45, 47-48, 50-52, 56, 58, 63-76, 79-80, 83, 85-87, 89-90, 103-105, 107, 110-111, 113, 115-117, 119-120, 122-123, 126-139, 142-144, 146-148, 150-153, 155-160, 162, 164-168, 172-175, 181-191, 193-196, 198-205, 216-218, 220, 222-224, 227-228, 230-231, 234-236, 238, 241-242, 244, 246, 248-254, 256-259, 263-265, 267-270, 273-274, 278-279, 283-288, 292-295, 297-298, 300-301, 304-307, 310-319, 323-324,

326, 328, 331-332, 337, 339-341, 342[3], 343-344, 345, 349, 352.)

The remaining facts are disputed by Plaintiff either in whole or in part. Plaintiff's responses disputing facts regarding his exhaustion of administrative remedies as to his *Bivens* and FTCA claims (Docs. 23, 38 ¶¶ 1-62) will be addressed in a separate section below.

With regard to the remainder of the facts that are disputed either in whole or in part by Plaintiff, with the exception of Paragraphs 106 and 336, which will be addressed below, Plaintiff fails to cite to the parts of the record that support his statements, and therefore he has not complied with LR 56.1.[4] In many instances, Plaintiff cites to the allegations in his Complaint to support his responses disputing Defendants' facts. (*See* Doc. 38 ¶¶ 77, 81-82, 88, 91-92, 98, 108-109, 121, 125, 141, 149, 153, 163, 169, 177-180, 197, 206-207, 211-213, 221, 225-226, 229, 232-233, 239, 245, 262, 266, 275, 277, 280, 282, 289-291, 296, 302-303, 320-322, 325, 329-330,

---

[3]An error in the numerical sequence of Defendants' facts occurred beginning at ¶ 342. However, in his Response, Plaintiff proceeded with the correct numerical sequence and we do the same in referring to the paragraphs following ¶ 342 in Defendants' Statement.

[4]LR 56.1 provides, in pertinent part, that "[s]tatements of material facts in support of, or in opposition to, a motion [for summary judgment] **shall include references to the parts of the record that support the statements.** All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." LR 56.1 (emphasis added). Plaintiff was provided with a copy of the relevant rules along with the Standing Practice Order issued in this case (*see* Doc. 4), and the Court referred him to those rules in directing him to file his opposition to the instant Motion (*see* Docs. 27, 29, 36).

338.)  Because a party responding to a motion for summary judgment may not rest on the allegations of his complaint, but rather must point to specific facts showing there is a genuine issue for trial, *see Jones, supra,* 214 F.3d at 407, in the instances where Plaintiff has failed to cite to evidence in support of his denials of fact, but instead has cited to the Complaint or offered argument, he has failed to controvert Defendants' facts, and the Court will deem these facts admitted, adopt them for purposes of disposing of the instant Motion, and incorporates them herein.  (*See* Doc. 23 ¶¶ 77, 81-82, 88, 91-92, 98, 108-109, 121, 125, 141, 149, 153, 163, 169, 177-180, 197, 206-207, 211-213, 221, 225-226, 229, 232-233, 239, 245, 262, 266, 275, 277, 280, 282, 289-291, 296, 302-303, 320-322, 325, 329-330, 338.)

In the remaining instances where Plaintiff disputes Defendants' facts either in whole or in part, he either submits new facts without citation to the record, offers explanation or argument, or states that he cannot confirm or deny Defendants' statements.  In these instances, the evidence Defendants cite in support of their facts properly supports them.  Because these facts have not been properly controverted by Plaintiff, we will adopt them as our own for purposes of disposing of the instant Motion, and incorporate them herein.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 n.5 (3d Cir. 2005) (the Third Circuit Court of Appeals observed that the District Court adopted all the facts of one party that were not clearly disputed by the

other party with sufficient citation to the record pursuant to under M.D. Pa. LR 56.1).[5]

We now turn to the two (2) responses by Plaintiff where he properly cited to evidence in disputing Defendants' facts. In Paragraph 106, in referring to Dr. Perkins's evaluation of Plaintiff on September 12, 2007, Defendants state as follows: "Dr. Perkins noted that Nunez was a 37 year old male who was being seen for complaints of pain in the back of the left ankle resulting from an injury that occurred while playing softball on July 4, 2007." (Doc. 23 ¶ 106.) In his response, Plaintiff states as follows:

> Plaintiff would agree with the facts as stated in ¶ # 106. However, significantly important facts were omitted from ¶ 106. The pain Plaintiff noted to Dr. Perkins extended all the way to the "back of the knee." **(See Exhibit F).** This bolsters Plaintiff's claims that he consistently told medical staff of pain in the back of his leg - not necessarily at the point of the ankle. Dr. Perkins also took it upon himself to note the poor quality of Plaintiff's English; and he further enforces Plaintiff's claim by stating that there "[is] an <u>obvious</u> defect in the Achilles tendon." (See <u>id.</u>). And lastly, Plaintiff would refer the Court to ¶ 99 of this document. At this paragraph, it is stated that Defendant PA Steffan checked the area of the Achilles and it was " . . . negative for a thompson sign." This occurred on September 7, 2007. However, <u>FIVE DAYS LATER</u>, when Dr. Perkins evaluated Plaintiff, Dr. Perkins noted that "Thompson's +."[6]

---

[5] *See also U.S. ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2005).

[6] A positive Thompson test in diagnosing an injury to the Achilles tendon is described as follows "while the patient lies prone on the examination table, the examiner squeezes the calf muscle; this maneuver by the examiner does not cause the normally expected plantar flexion of the foot." *See* The Merck Manual Online Medical Library,

(continued...)

11

(Doc. 38 106.) (emphasis added.)  In responding to Defendants' Paragraph 106,

Plaintiff properly has cited to evidence to support his response, namely Exhibit F to his

Complaint, which is a copy of the Consultation Report prepared by Dr. Perkins

following his evaluation of Plaintiff on September 12, 2007.  (*See* Doc. 1 at 31.)  To

the extent that Plaintiff's response cites to additional statements in Perkins's Report

that were not contained in Defendants' Paragraph 106, (*i.e.* that Plaintiff reported pain

in the "back of knee," Plaintiff spoke "poor English," there was an "[o]bvious defect in

Achilles tendon," and Plaintiff's Thompson's sign was positive), the Court accepts

those statements as true and adopts them as facts for our present purposes.  (*See id.*)

However, Plaintiff also included argument in his response that statements in Perkins's

report support his claims in this action, and comparing  Steffan's evaluation of him

with Perkins's evaluation.  (*See* Doc. 38 ¶ 106.)  The Court does not adopt arguments

contained in the response as fact.

The second response by Plaintiff where he properly cites to evidence to support

his response is in Paragraph 336.  In that statement, in referring to Dr. Perkins's

evaluation of Plaintiff on January 14, 2009, Defendants state, "As Nunez exited the

---

[6](...continued)
http://www.merck.com/mmpe/sec21/ch324/ch324m.html?qt=thompson&alt=sh#sec21-ch324-ch324l
-1048a.

evaluation, Dr. Perkins noted Nunez's limp had disappeared and he displayed a normal heel/toe gait." (Doc. 23 ¶ 336.) In response, Plaintiff states, "Plaintiff would disagree as HE IS MISSING 2 CM OF HIS CALF MUSCLE; it would be impossible to walk normally. (**See Exhibit H**)." (Doc. 38 ¶ 336) (emphasis added). Although Plaintiff properly cites to evidence to support his response, Exhibit H to his Complaint, which is a copy of the operative report for the surgery to repair his Achilles tendon, (*see* Doc. 1 at 33), the operative report itself does not support his response that "it would be impossible to walk normally," and therefore, Plaintiff's response is not accepted as a fact.

Accordingly, the Court adopts Defendants' Facts at Paragraphs 106 and 336 as our own for purposes of disposing of the instant Motion and incorporate them herein. (*See* Doc. 23 ¶¶ 106, 336.) We now turn to an examination of Nunez's exhaustion of administrative remedies.

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.    *Bivens* Claims

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). As such, the failure to exhaust available administrative remedies must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

Defendants properly have raised the matter of Nunez's exhaustion of administrative remedies. (*See* Doc 22, Defs.' Brief, at 6-12; Doc. 23, Dfts. SMF, ¶¶ 1-62.) The BOP Administrative Remedy Program is described at 28 C.F.R. Part 542. The purpose of the program "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.

14

28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id.* at § 542.14(a). If dissatisfied with the response, the inmate then may appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id.* at § 542.15(a).

Defendants have presented computerized records of Nunez's pursuit of administrative remedies while confined in BOP custody. The undisputed facts establish the following with regard to Nunez's filing of administrative remedies:

BOP records show that Nunez has filed a total of eleven (11) administrative remedies. (Doc. 23 ¶ 14.) Ten (10) of these administrative remedies raise concerns about the allegations raised in the Complaint. (*Id.*) Defendants argue that Nunez failed to exhaust his administrative remedies with respect to his claims that Defendants were deliberately indifferent to his serious medical needs by failing to utilize an interpreter during his visits to Health Services. (*Id.* ¶ 15; Doc. 22 at 6-12.) Nunez agrees that "he did not file an administrative grievance concerning Defendant's [*sic*] failure to provide an interpreter" and attempts to clarify in his responses to Defendants' Statement of Facts that he did not intend to assert a cause of action with respect to this allegation, but rather to include it to support "other causes of action." (Doc. 38 ¶ 13.) Indeed, it appears that his allegations against Defendant Steffan that "he knew that Plaintiff could

not effectively communicate his medical status to him, deliberately interfering with the diagnosis and treatment of Plaintiff's serious medical needs" and that "the severity of Plaintiff's tendon injury was magnified due in large part to his refusal to allow a Spanish interpreter to be present when examining Plaintiff" are components of his deliberate indifference claim against Steffan. (*See* Doc. 1 at 18 ¶¶ (1), (2).) Regardless of whether these allegations form the basis of an independent claim or are a component of Nunez's deliberate indifference claim against Steffan, he did not properly exhaust these issues. Specifically, a review of Nunez's administrative remedies on these issues reveals the following:

On March 5, 2008, Nunez filed administrative remedy 485115-F1 with staff at FCI Schuylkill complaining about medical treatment that he had received after surgery to repair his Achilles tendon injury. (Doc. 22-4 at 30-31, 3/5/08 Request for Administrative Remedy.) In his typewritten attachment to the remedy, Nunez states, "I relay my concerns to my (P.A.) Mr. Steffan, but he tells me I have to wait to see my surgeon." (*Id.* at 31.) In the second paragraph of his attachment, Nunez states that, "I also have very limited understanding of the English language, and I try my best to explain the amount of pain that I have but my pleas for help are dismissed as a 'normal' healing process." (*Id.*) As relief, Nunez requests that he be examined by the

16

surgeon with Dr. Hendershot and an interpreter present. (*Id.*)

In the fourth paragraph of administrative remedy 479631-R4, Nunez's appeal to the Regional Office from the denial of remedy 485115-F1, Nunez states, "I was given x-rays and told that I do not have an injury to my back, but I am never given any clear or decisive answers. I continue to go to sick call and ask for treatment for my back. The (PA) [Steffan] even tried to give me psych. pills. I feel that because I do not speak English, that the medical staff is taking advantage of me." (*Id.* at 33, Regional Administrative Remedy Appeal.)

Finally, in the second paragraph of remedy 479631-A1, Nunez's appeal to the Central Office from the denial of his Regional Office appeal, Nunez states, "Steffan takes advantage of me because I do not speak English and he knows of the emanate [*sic*] civil suit." (*Id.* at 45.)

Following a review of his administrative remedies, the Court concludes that, while Nunez alluded to difficulty either speaking or comprehending English in his administrative remedies regarding the medical care he received from Defendant Steffan, he never stated that he requested an interpreter, and Steffan denied his request. The Third Circuit Court of Appeals has held that, "[a]t all stages of the administrative appellate process, the inmate must 'state specifically the reason[s] for appeal.'" *Milton*

*v. Ray,* 301 Fed. Appx. 130, 133-34 (3d Cir. 2008 ) (citing 28 C.F.R. § 542.15(b)(1)). The fact that Nunez mentioned a lack of English proficiency in his grievances was insufficient to put Defendant Steffan on notice of a claim of deliberate indifference to a serious medical need based on an alleged knowledge of a communication problem with Nunez and refusal to provide a Spanish interpreter. Therefore, the Court concludes that Nunez has not exhausted this portion of his deliberate indifference claim against Steffan.[7]

## B.    Tort Claim

The FTCA, 28 U.S.C. § 2671 *et seq.*, is a statutory waiver of sovereign immunity for tort claims. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The FTCA allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, as the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. *Livera v. First Nat'l Bank*, 879 F.2d 1186, 1194 (3d Cir. 1989).

As a prerequisite to a suit under the FTCA, a claim first must be presented to,

_____

[7]Even if Nunez had exhausted this claim, he has failed to submit evidence to dispute Defendants' evidence showing that there are four (4) staff members in the Health Services department at FCI Schuylkill who are fluent in Spanish and who are available to act as translators when other staff determine it is necessary (Doc. 22-8 at 61 ¶ 5, Ask-Carlson Decl.); that, in the rare circumstances a staff translator is unavailable, arrangements can be made for an inmate translator (*Id.*); and, the first time that Nunez requested a Spanish interpreter at Health Services was on May 9, 2008 (Doc. 22-5 at 35 ¶ 67, Steffan Decl.).

and denied by, the federal agency. The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). In the instant case, on November 8, 2007, Nunez filed an administrative tort claim with the BOP Northeast Regional Office in which he alleged that FCI Schuylkill Health Services staff failed to properly diagnose and treat the injury to his Achilles tendon that occurred on July 4, 2007 on the softball field. (*See* Doc. 22-4 at 55-57, 11/8/07 Tort Claim.) He alleged that the delay in properly diagnosing his injury and ordering the required surgery caused him "unjust pain and suffering," and he requested $10,000,000 in damages. (*Id.* at 55.)

On January 10, 2008, Nunez filed an amendment to his previously filed administrative tort claim. (*See id.* at 59-60, 1/10/08 Amendment to Tort Claim.) In his amendment, Nunez added a new claim in which he alleged that Health Services staff were negligent in failing to remove his loose teeth prior to the surgery to repair his Achilles tendon injury, which necessitated the use of a spinal epidural for the surgery, and resulted in an injury to his back. (*Id.*) He requested $5,000,000 in damages. (*Id.*)

On May 6, 2008, BOP Regional Counsel Henry J. Sadowski issued the following response:

> After careful review of this claim, I have decided not to offer a settlement. An investigation reveals that since you sustained your injury playing softball on July 4, 2007, at FCI Schuylkill, you have been treated by medical staff, including a BOP physician and outside orthopedic specialist on numerous occasions, been provided treatment and surgery for your injuries, and provided routine and follow up appointments and medications as required. You have received medical care and treatment consistent with the appropriate standard of care and consistent with the approved treatment guidelines and protocols. There is no evidence to suggest that you have experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons' employee. Accordingly, your claim is denied.

(Doc. 22-4 at 63, 5/6/08 Response.) Based on the foregoing, Nunez successfully has exhausted his FTCA claims in his Complaint that the Health Services Staff at FCI Schuylkill were negligent in failing to properly diagnose and treat his Achilles tendon injury and in failing to remove his loose teeth prior to surgery to repair the injury, thus necessitating the use of a spinal epidural for the surgery, and resulting in an injury to his back. (*See* Doc. 1 at 20-25.) The Court now will turn to an analysis of the instant Motion.

## IV. DISCUSSION

### A. Sovereign Immunity

Defendants contend that Nunez's *Bivens* claims brought against them in their

20

official capacities should be dismissed on the basis that they are barred by sovereign immunity.  (*See* Doc. 22 at 12.)  The Court agrees.  Sovereign immunity protects the Government from suit except when it has explicitly waived that immunity.  *United States v. Bein,* 214 F.3d 408, 413 (3d Cir. 2000).  The waiver must be "express[ed] unequivocally in statutory text and will not be implied.  *Id.* (citing *Lane v. Pena,* 518 U.S. 187, 192 (1996)).  "[S]overeign immunity advances a jurisdictional bar which a party may raise at any time, even on appeal, and which [a] court may raise *sua sponte.*" *Id.* at 412.

In the instant case, Nunez specifically states in his Complaint that he is bringing his claims against all of the Defendants in their official capacities.  (*See* Doc. 1 at 2.)  "An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity. . . ." *Lewal v. Ali*, 289 Fed. Appx. 515, 516 (3d Cir. 2008) (non precedential) (citing *FDIC v. Meyer*, 510 U.S. 471, 483 (1994); *Jaffee v. United States*, 592 F.2d 712, 717 (3d Cir. 1979)).   This Court is barred from hearing claims against government officials in their official capacities unless Congress has expressly waived immunity, which it has not.  *See Chinchello v. Fenton*, 805 F.2d 126, 130 n. 4 (3d Cir. 1986); *see also Consejo de Desarrollo Economico de Mexicali v.*

*United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (*Bivens* claims only can be maintained against a defendant in his or her individual capacity).

Inasmuch as Nunez seeks monetary damages against all Defendants in their official capacities, these claims must be dismissed on grounds of sovereign immunity. However, Nunez also states that he is bringing claims against Defendants Sniezek and Steffan in their individual capacities. (*See* Doc. 1 at 2.) Therefore, the claims brought against Defendants Ask-Carlson, Justice, Hendershot, and Rarick in their official capacities will be dismissed in their entirety on the basis of sovereign immunity; the claims brought against Defendants Sniezek and Steffan in their official capacities will be dismissed; and the claims brought against Defendants Sniezek and Steffan in their individual capacities will be discussed below.

## B.    Defendant Sniezek

It is well-established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). However, the personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." *Id.; Pansy v. Preate*, 870 F. Supp. 612, 630 (M.D. Pa. 1994), *aff'd mem.*, 61 F.3d 896 (3d Cir.

1995).

Prison administrators cannot be found deliberately indifferent under the Eighth Amendment because they fail to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," a non-medical prison official will not be found to be deliberately indifferent. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Deliberate indifference can be (1) denying reasonable requests for medical treatment that result in undue suffering or the threat of tangible residual injury, (2) delaying necessary medical treatment for non-medical reasons, or (3) providing an easier and less efficacious treatment to the inmate. *See Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).

Nunez alleges that Sniezek knew that he needed immediate surgery to correct his torn Achilles tendon and also that he needed to have his loose teeth removed before general anesthesia could be administered for the surgery. (Doc. 1 at 15.) Nunez alleges that Sniezek told him to "relax" when he asked when his loose teeth would be removed and also told him that a special dental appointment had been made for him.

(*Id.* at 15-16.)  However, Nunez alleges that the appointment never took place, thereby requiring him to have an epidural rather than general anesthesia at the time of the surgery, which he claims resulted in a back injury.  (*Id.* at 16.)

However, in support of the instant Motion, Defendant Sniezek has submitted a Declaration, under penalty of perjury, stating that, "I deny that I ever intentionally violated any of inmate Nunez's constitutional rights.  While I do recall this inmate, I did not have any involvement in any of his allegations."  (Doc. 22-8 at 59-60, Sniezek Decl.)  Nunez has not submitted any evidence to oppose Sniezek's sworn statement, and thus there is no genuine issue of material fact that Sniezek lacked the requisite personal involvement.  Therefore, Defendant Sniezek is entitled to judgment as a matter of law as to Nunez's *Bivens* claims brought against him in his individual capacity.

### C.    Defendant Steffan

Nunez alleges that Steffan was deliberately indifferent to his serious medical needs in refusing to provide him with adequate medical treatment since July 4, 2007. In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or

24

omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and

treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (citations omitted.)

Furthermore, in the prison medical context, deliberate indifference generally is not

found when some significant level of medical care has been offered to an inmate.

*Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct 13, 2000) ("courts have

consistently rejected Eighth Amendment claims where an inmate has received some

level of medical care"). Courts will "disavow any attempt to second guess the

propriety or adequacy of a particular course of treatment . . . which remains a question

of sound professional judgment." *Little v. Lycoming County,* 912 F. Supp. 809, 815

(M.D. Pa. 1996) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754,

762 (3d Cir. 1979)). Mere disagreement as to the proper medical treatment does not

support an Eighth Amendment claim. *Monmouth County Correctional Institutional

Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) ("Courts, determining what

constitutes deliberate indifference, have consistently held that mere allegations of

malpractice do not raise issues of constitutional import . . . Nor does mere

disagreement as to the proper medical treatment support a claim of an eighth

amendment violation."); *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990) (mere

disagreement over proper treatment does not state a claim upon which relief can be

granted).

In this case, Nunez has failed to submit any evidence to dispute Defendants' evidence showing that, on each of the thirty-two (32) occasions that Defendant Steffan saw him at FCI Schuylkill Health Services after July 4, 2007, Steffan consistently provided adequate medical treatment in response to the symptoms that were reported to him. (*See* Doc. 22-5 at 25-43, Steffan Decl.; Doc. 22-5 at 62-76, Doc. 22-6 at 1-4, Chronological Record of Medical Care.)

In particular, although Nunez alleges that the tear of his Achilles tendon occurred on July 4, 2007 and remained undiagnosed until Dr. Perkins, an orthopedist, diagnosed a chronic rupture of the Achilles tendon on September 12, 2007, the undisputed factual record reflects that an x-ray on July 13, 2007 showed "no evidence of fracture or any other osseous abnormality." (Doc. 22-6 at 6, 7/22/07 Radiology Report.)

The undisputed factual record also reflects that, on August 13, 2007, Nunez was seen by Steffan for complaints that he had re-aggravated his left ankle injury the previous weekend after slipping on a wet floor. (Doc. 23 ¶ 91.) At that time, upon examination, Steffan determined that there was no Thompson sign and that the Achilles tendon appeared to be intact. (*Id.* ¶¶ 92-93; Doc. 22-6, Medical Record, at 2.) However, following an examination on September 7, 2007, Steffan determined that

27

there was a possible partial tear of the Achilles tendon or peroneus tendon, which led to the direction for a consultation with Dr. Perkins, who diagnosed a rupture of the Achilles tendon. (Doc. 23 100-101, 105, 107; Doc. 22-6, Medical Record, at 1; Doc. 22-6, 9/12/07 Consultation Sheet, at 14.)

Within his Response (Doc. 38) to Defendants' Statement of Facts, Nunez attempts to create an issue of fact by asserting that Steffan made notations in his medical records stating that he provided medical care when he actually did not provide any care. (*See* Doc. 38 ¶¶ 21, 41, 53, 82, 92, 149, 262.) These unsupported assertions by Nunez are insufficient to create a genuine issue of material fact concerning the medical care he received as reflected by the medical records. *See Jones v. Hendricks*, 173 Fed. Appx. 180, 183 (3d Cir. 2006) (finding that prisoner failed to meet burden of showing genuine issue for trial despite assertion that prison documents falsified since failed to offer any material challenging veracity of prison files); *see also Chima v. Obedoza*, 72 Fed. Appx. 577, 578 (9th Cir. 2003) (court upheld grant of summary judgment where medical records directly contradicted Plaintiff's conclusory assertions of "wholly false" medical records). The medical records reflect that, at each of his thirty-two (32) visits with Nunez, Steffan carefully recorded the symptoms that were reported, the diagnosis, and the treatments prescribed. Nunez has failed to present any

evidence to suggest that these entries by Steffan were false. Because Nunez has failed to establish that Steffan knew of and disregarded an excessive risk to his health or safety, Steffan is entitled to judgment as a matter of law with respect to Nunez's Eighth Amendment deliberate indifference claim brought against him in his individual capacity.

### D.  Tort Claim

Nunez asserts a claim against the United States of America under the FTCA that the Health Services Staff at FCI Schuylkill were negligent in failing to properly diagnose and treat an injury to his Achilles tendon and in failing to remove his loose teeth prior to surgery to repair the injury, which resulted in the necessity of using a spinal epidural for the surgery and an injury to his back. (*See* Doc. 1 at 20-25.)

In the instant Motion, Defendants assert that Nunez's FTCA claims against the United States should be dismissed because he failed to file a certificate of merit ("COM"). (*See* Doc. 22 at 33-39.) Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff file a COM from a medical expert with respect to a professional negligence claim against the United States.[8]

---

[8]A COM must be filed for a Pennsylvania State professional negligence claim or the claim will be dismissed. *Velazquez v. UPMC Bedford Memorial Hospital,* 328 F.Supp.2d 549, 558 (W.D.Pa.2004). This Court has found that the COM requirement of Rule 1042.3 applies to cases

(continued...)

In *Boyd v. U.S.,* 2006 WL 2828843, * 6 (M.D. Pa. Sept. 29, 2006) (Vanaskie, J.), this Court stated that "[Pa.] Rule 1042.3 is indeed applicable to state law malpractice claims brought in federal court." Rule 1042.3 applies when federal courts are addressing state law professional negligence claims in both diversity and supplemental jurisdiction cases. *See id.* at *5. The *Boyd* Court also stated:

> Under Pennsylvania law, a party filing a professional liability claim must file a certificate of merit in which a professional licensed in the same field supplies a written statement that a reasonable probability exists that the actions of the defendant fell outside acceptable professional standards and that the actions were the cause of harm suffered by the plaintiff. *See* Pa. R.C. P. 1042.3(a)(1). If a Plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, Defendants may file a praecipe for entry of a judgment of *non pros*. *See* Pa. R.C.P. 1042.6

*Id.*; *See also Santee v. United States,* 2008 WL 4426060 (M.D. Pa. May 08, 2008) (Nealon, J.); *Lopez v. Brady,* 2008 WL 4415585 (M.D. Pa. Sep. 25, 2008) (McClure, J.).

The Third Circuit Court of Appeals recently affirmed this Court's finding that the COM requirement is a substantive rule of state law that applies in federal court actions. *Perez*, *supra* n.6, 304 Fed. Appx. at 74 (holding Rule 1042.3 is a substantive state law that federal district courts must apply).

---

[8](...continued)
filed in federal court, and also that it applies to incarcerated and *pro se* plaintiffs like Nunez. *See Perez v. Griffin,* 2008 WL 2383072, * 3 (M.D. Pa. Jun. 9, 2008) (Conner, J.), aff'd., 304 Fed. Appx. 72 (3d Cir. 2008).

In the instant case, Nunez was required to file a COM producing expert testimony that Defendants were negligent in their diagnosis and treatment of his Achilles tendon injury, including in failing to remove his loose teeth prior to surgery to repair his tendon, thus necessitating the use of an epidural, and that their negligence was the proximate cause of his back injury. Nunez filed his Complaint on October 27, 2008. (*See* Doc. 1.) Therefore, on or before December 26, 2008, he was required to file a COM. The undisputed record reflects that Nunez neither filed a COM nor requested an extension of time in which to do so.

Pursuant to the Third Circuit's recent holding in *Perez*, unless Nunez can show a reasonable explanation or legitimate excuse for his failure to timely file a COM, his FTCA medical malpractice claim is subject to dismissal without prejudice. In *Perez*, the Court observed that "failure to comply with Rule 1042.3 is not fatal to claims of professional liability if the Plaintiff can show 'reasonable excuse' for the noncompliance." *Perez*, 304 Fed. Appx. at 74 (quoting *Womer v. Hilliker*, 908 A.2d 269, 279-80 (Pa. 2006)). "Under Pennsylvania law, a court may consider two equitable exceptions when a plaintiff has improperly failed to file a COM: whether the plaintiff has substantially complied with Rule 1042.3 and whether the plaintiff has offered a reasonable explanation or legitimate excuse for failure to comply." *Ramos v. Quien*, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008)

(citing *Womer*, 908 A.2d at 276, 279).

In the instant case, Nunez has failed to present a "reasonable explanation or legitimate excuse for non-compliance" with the COM requirement. He was well aware that he was raising a professional negligence claim when he filed his Complaint in October 2008, and he did not file, or timely request an extension of time to file, a COM. Moreover, even if Nunez was unaware of this requirement, Defendants' argument regarding the required COM in their brief in support of the instant Motion put him on notice of it. Yet, the record reflects that he has not requested an extension of time to file a COM or explained his failure to timely do so. Consequently, Nunez's FTCA claims against the United States will be dismissed for failure to file a COM.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 17) will be granted. An appropriate Order will enter.